UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RAMANAND RAMAH,

                   Plaintiff,                **REPORT AND RECOMMENDATION**
                                            **20 CV 03317 (LDH)(LB)**

     -against-

138 HILLSIDE AVE INC. d/b/a Queens Hill
Service Station, and ARSHAD HUSSAIN,

                    Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Ramanand Ramah brings this action against defendants 138 Hillside Ave Inc. d/b/a Queens Hill Service Station ("138 Hillside"), and Arshad Hussain under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW § 190 et. seq., alleging that defendants failed to pay him minimum wage or overtime wages and to provide him spread-of-hours pay, rate of pay statements, and required wage statements. Compl. ¶¶ 1–2, ECF No. 1. Plaintiff also alleges that defendants made unlawful deductions from his wages and unlawfully retaliated against him in violation of the FLSA and NYLL. Id. Despite proper service of the summons and complaint, defendants have failed to plead or otherwise defend this action. See ECF No. 9. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 10. The Honorable LaShann DeArcy Hall referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for a default judgment should be granted.

# BACKGROUND

## A.    The Parties

Plaintiff Ramanand Ramah worked as a mechanic at 138 Hillside, a service station in Jamaica, New York from approximately April 2007 until March 18, 2020. Compl. ¶¶ 5–6.[1] Plaintiff alleges that the service station's sales exceeded $500,000.00 a year and that it was engaged in interstate commerce because "the gasoline, engine oil, tires, cigarettes, and car parts defendants sold were manufactured outside of the State of New York." Id. at ¶ 17. Plaintiff thus alleges that defendant, the service station, meets FLSA's "enterprise" definition. Id. at ¶ 18.

Plaintiff alleges that defendant Hussein "possessed substantial control over working conditions at 138 Hillside, and over the policies and practices with respect to the employment and compensation of plaintiff, including determining "the wages and compensation of the employees," maintaining employee records, and having authority to "hire and fire employees." Id. at ¶¶ 12–13.

Plaintiff alleges the defendants knowingly and willfully failed to pay him minimum wage, overtime wages, spread-of-hours pay, and failed to provide rate of pay and wage statements. Id. at ¶¶ 1–2. Plaintiff also alleges that defendants made unlawful deductions from plaintiff's wages and unlawfully retaliated against him in violation of the FLSA, 29 U.S.C. § 623(d) and NYLL § 215(2). Id. at ¶¶ 34, 40.

## B.    April 2019 through March 2020

Defendants purchased and began operating 138 Hillside on April 2, 2019. Id. at ¶ 21. Between April 2, 2019 and March 18, 2020, plaintiff worked six days a week, with Sundays off. Id. at ¶ 26. Plaintiff typically worked from 8:00 a.m. to 6:00 p.m. from Monday to Friday, and

---

[1] The facts are taken from plaintiff's complaint and are assumed to be true for the purposes of deciding a motion for default judgment. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997).

from 8:00 a.m. to 5:00 p.m. on Saturday. Id. He worked approximately 59 hours per week and was not given a lunch break. Id. at ¶ 28. Plaintiff's responsibilities included "general maintenance of motor vehicles including diagnosing, repairing and servicing engines, installing new brakes and shocks, making repairs to transmissions, fixing flats and replacing tires, performing oil changes, and making sales to customers." Id. ¶ 19.[2] Plaintiff alleges that defendants have a record of the exact days and hours that he worked because plaintiff always recorded the time he started and ended work on a punch card. Id. at ¶ 27. Plaintiff also alleges that defendants failed make required postings or provide notices to employees regarding the applicable wage and hour requirements of the FLSA and the NYLL. Id. at ¶ 44.

Defendants paid plaintiff by alternating between direct deposit paid into his bank account every other week, and by paying him in cash every other week. Id. at ¶ 25. On weeks when plaintiff was paid by direct deposit, plaintiff received $15.00 per hour for fifty-three hours, for the total sum of $795.00, no matter how many hours he actually worked and without a premium for overtime. Id. at ¶ 31. On weeks when plaintiff was paid in cash, plaintiff received $684.00, regardless of the actual number of hours he worked that week. Id. at ¶ 33. Defendants never provided plaintiff with written wage notices and statements. Id. at ¶ 45. Before defendants took over as plaintiff's employers, plaintiff had always been paid by check, including premium pay for overtime as well as other benefits. Id. at ¶ 29.[3]

When plaintiff questioned why he was only being paid $684.00 in cash, he was told it was because defendants were withholding his taxes ($684.00 was the net amount plaintiff received from direct deposit after taxes were deducted). Id. at ¶ 33. But defendants failed to pay withholding

---

[2] Plaintiff's duties remained essentially the same from the time he was hired by the prior owners in April 2007 until he stopped working at the service station on March 18, 2020. Id. at ¶ 38.

[3] Defendants allegedly agreed that all the employees who stayed on, including plaintiff, would continue to receive the same salary and benefits as they had under the previous owners. Id. ¶ 30.

taxes to the government for the weeks plaintiff was paid in cash. Id. at ¶¶ 33, 34. In approximately February 2020, plaintiff confronted defendants about this and demanded that he only be paid via direct deposit moving forward, but defendants continued to pay plaintiff the same amount in cash every other week. Id. at ¶¶ 35, 36. Shortly after plaintiff complained about his pay, defendants began cutting plaintiff's workdays and on March 16, 2020, he was told not to come to work.[4] Plaintiff worked on March 17 and 18, 2020 but on March 19, 2020, he was told to stay home due to COVID-19 and defendants refused to let him return to work thereafter. Id. at ¶¶ 38–40. The service station never closed, and no other employee was told to stay home. Moreover, plaintiff alleges that defendants hired a mechanic to replace him shortly after plaintiff was terminated. Id. at ¶ 39. Plaintiff alleges that defendants' failure to pay him proper wages was knowing, intentional, and willful. Id. ¶ 43.

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 23, 2020. ECF No. 1. The defendants were served with the summons and complaint on July 24, 2020. ECF Nos. 6, 7. No defendant answered or appeared in the action and the Clerk of the Court noted defendants' default on September 11, 2020, ECF No. 9. Plaintiff filed the instant motion for a default judgment on January 22, 2021. ECF No. 10. In support of his motion, plaintiff provides the following: Plaintiff's Affidavit/Declaration in Support of Motion for Default Judgment ("Ramah Decl.") (ECF No. 11); a Memorandum of Law ("Memo.") (ECF No. 12); the Complaint (ECF No. 12-1); an Affidavit of Service regarding Arshad Hussein (ECF No. 12-2, 1); an Affidavit of Service regarding 138 Hillside Ave Inc. (ECF No. 12-2, 2); a Certificate of Default (ECF No. 12-3); plaintiff's damages calculation and an affirmation

---

[4] Plaintiff was also told that he was not entitled to a one-week vacation. Id. at ¶ 37.

regarding attorney's fees (ECF No. 13); and plaintiff counsel's time and billing records (ECF Nos. 13-1, 13-2).

## DISCUSSION

### I.    Personal Jurisdiction and Service of Process

The Court first addresses service of process on the defendants, which is a prerequisite to the entry of a default judgment. See Sheldon v. Plot Commerce, 15-CV-5885 (CBA)(CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) Report and Recommendation adopted by 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Under Rule 4 of the Federal Rules of Civil Procedure, a natural person may be personally served by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(A), (B). Service upon a corporation may also be effected in any manner authorized by state law for service. FED. R. CIV. P. 4(e), (h). New York law provides that service upon a corporation may be made by delivering the summons and a copy of the pleadings to "an officer, director, managing or general agent, or cashier, or assistant cashier, or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).

Based on the affidavit of the process server and the registered address of the corporate defendant, the Court finds that 138 Hillside was served by delivery of the Summons and Complaint to Sannan, a manager of the service station, in compliance with N.Y. BUS. CORP. LAW § 311(a)(1) and Fed. R. Civ. P. 4(h)(1)(B). See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 30 (E.D.N.Y. 2015) (holding that restaurant was properly served under New York law when a manager at the restaurant was served at the restaurant itself).

Defendant Hussein was also properly served. Sannan, defendant Hussein's co-worker, was served at their actual place of business and copies of the summons and complaint were mailed to Hussein within twenty days as required by New York law. See Id. at 30 (holding that service of individual defendant was proper where "plaintiffs' process server delivered the papers to a co-worker of majority age . . . of the Individual Defendants at their actual place of business"). Thus, the Court finds that proper service was made upon defendants.

## II.    Legal Standard for a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,

Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint.

The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). "When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunwan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (citing Chun Ji Yin v. Kim, No. 07-CV-1236(DLI)(JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008)).

## III. Liability

### A. Plaintiff is Entitled to Protection Under the FLSA

In general, the FLSA requires that employers pay employees a minimum wage and provide overtime pay. See Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010). A plaintiff asserting a claim under the FLSA must demonstrate that he is an "employee," as defined by the FLSA, of "an enterprise engaged in commerce." Fermin, 93 F. Supp. 3d at 31–32 (citing 29 U.S.C. §§ 206(a), 207(a)); Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y.

2009). The FLSA defines an employee as "any individual employed by an employer." Fermin, 93 F. Supp. 3d at 32 (citing 29 U.S.C. § 203(e)(1)).

Under the FLSA, a business is "an enterprise engaged in commerce" when it "has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce . . . [and has] gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); see also Padilla, 643 F. Supp. 2d at 300. In this context, commerce means interstate commerce. 29 U.S.C. § 203(b).

Here, plaintiff's allegations demonstrate that he is entitled to protection under the FLSA. Plaintiff's complaint alleges that he worked as a mechanic at defendants' service station and therefore he was an employee as that term is defined by FLSA. Compl. ¶ 19. Plaintiff alleges that the service station was a business engaged in interstate commerce because the "gasoline, engine oil, tires, cigarettes, and car parts Defendants sold were manufactured outside of the State of New York."  Compl. ¶ 17. Plaintiff also states that the service station had gross sales in excess of Five Hundred Thousand Dollars ($500,000.00) per year in provided services. Id. at ¶ 16. These allegations are sufficient in the present context to satisfy the statutory requirements under the FLSA. See Nam v. Ichiba Inc., 19-CV-1222, 2021 WL 878743, at *5 (E.D.N.Y. March 9, 2021) (finding it reasonable to infer that the goods necessary to operate a restaurant with $500,000.00 in sales must have traveled in interstate commerce) (citing Fermin, 93 F. Supp. 3d at 33 n.3).

**B.    Plaintiff is Entitled to Protection Under the NYLL**

The NYLL is New York's analogue to the FLSA, see D'Arpa v. Runway Towing Corp., No. 12-CV-1120(JG), 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)), and provides minimum and overtime wage protections along with other protections for employees. N.Y. LAB. LAW § 652. The definitions for "employee" and "employer" under the NYLL are similar to those under the FLSA. See N.Y. LAB. LAW § 190; Lopic v. Mookyodong Yoojung Nakjie, Inc. 16-CV-4179 (KAM)(CLP), 2017 WL 10845064, at *5 (E.D.N.Y. 2017). In considering whether an individual is an employee under the NYLL, courts look to whether a worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Fermin, 93 F. Supp. 3d at 34 (quoting Byong v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003)).

Plaintiff has sufficiently alleged that he was an employee of defendants under the NYLL. As set forth in the complaint, he worked scheduled shifts at the service station on specified days and was on the service station's payroll, receiving weekly payments. Compl. ¶¶ 31–33. These facts establish his status as an employee. See Fermin, 93 F. Supp. 3d at 34 (finding allegations of fixed hours, schedules, and rates of pay sufficient to prove plaintiffs' status as employees under NYLL).

**C.    Defendants Were Plaintiff's Employers Under Both FLSA and NYLL**

The FLSA defines the term employer to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013) (quoting 29 U.S.C. § 203(d)). The Second Circuit instructs that Courts must look to the following four factors when evaluating an alleged employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (internal quotation marks omitted). Courts should look to the "totality of the circumstances, and no individual factor is dispositive." Nam, 2021 WL 878743, at *4. The NYLL and FLSA definitions of "employer" are coextensive. Fermin, 93 F.Supp.3d at 3 (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011)). A finding that an individual defendant is an employer under the FLSA determines that she is an employer under the NYLL. Id. (citing Apple v. Atlantic Yards Dev. Co., LLC, No. 11 Civ. 5550(JG), 2014 WL 5450030, at *6–9 (E.D.N.Y. Oct 27, 2014)).

Plaintiff alleges that Arshad Hussein, owner of 138 Hillside, "hired him, set his pay rate, scheduled his hours of work, supervised his performance and paid him each week." ECF No. 12 at ¶ 16. As such, plaintiff has established that defendants 138 Hillside and Hussein were his employers under the FLSA and the NYLL.

### 1.    Defendants are Jointly and Severally Liable

Where defendants "were jointly Plaintiff['s] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiff['s] favor." Fermin, 93 F.Supp.3d at 3 (citing Pineda v. Masonry Constr., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011)). Here, plaintiff's allegations support a finding that both defendants were each his employer and therefore the defendants are jointly and severally liable for any damages award. Nam, 2021 WL 878743, at *6 (citing Lemache v. Tunnel Taxi Mgmt., LLC, 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019)).

### D.   <u>Liability for Unpaid Wages</u>

#### 1.   **Minimum Wage**

The federal minimum wage, at all relevant times, has been $7.25 under the FLSA. 29 U.S.C. § 206(a)(1). The minimum wage in New York and New York City was $13.50 per hour from December 31, 2018 until December 31, 2019, when it increased to $15.00 per hour. N.Y. Lab. Law § 652(1).

Plaintiff's complaint states that defendants failed to pay plaintiff the applicable minimum hourly wage. Compl. ¶¶ 47, 53. However, plaintiff also alleges that he was paid $15 per hour for 53 hours per week, <u>Id.</u> ¶ 31, and so he was paid at or above the applicable minimum wage rate for more than 40 hours per week. Therefore, plaintiff fails to establish any minimum wage violation.[5] Furthermore, while plaintiff raises the issue of unpaid minimum wages in his complaint, such damages are not included in his declaration in support of his request for damages. <u>See generally</u>, Ramah Decl.

#### 2.   **Overtime Wages**

Plaintiff alleges that defendants failed to pay him proper overtime wages under both the FLSA and the NYLL, which each require pay equal to one and one-half times an employee's regular rate of pay for all hours worked in excess of 40 hours per week. <u>See</u> 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2. The Complaint states that, until March 18, 2020 defendant worked 59 hours per week but never received "a premium overtime rate for any of the hours over forty he had worked that week." Compl. ¶ 31. These allegations are sufficient to establish defendants' liability

---

[5] Plaintiff alleges that he was not paid for six hours per week, hours for which plaintiff was paid no wages whatsoever. The Court calculates his damages owed for those hours as overtime wages, not minimum wages. <u>See</u> <u>Villar v. Prana Hospitality, Inc.</u>, 2017 WL 1333582 at *11 (S.D.N.Y April 11, 2017) (calculating unpaid minimum wages in a FLSA default case up to 40 hours worked per week, and all hours worked in excess of 40 as overtime wages).

for failure to pay plaintiff overtime wages under the FLSA and the NYLL. Nam, 2021 WL 878743, at *6 (citing Leon v. Zita Chen, 16-CV-480(KAM)(PK), 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017)).

### E.   New York Law's Wage Statement Requirement

The New York Labor Law requires that employers provide employees with a wage statement documenting certain specified information at the time wages are paid. N.Y. LAB. LAW § 195(3). Allegations that an employer failed to provide these written pay stubs suffice to establish the employer's liability, entitling the employee to damages. Piedra v. Ecua Restaurant Inc., 17-CV-3316 (PKC)(CLP), 2018 WL 1136039 at *14–15 (E.D.N.Y. Jan. 31, 2018). Plaintiff's allegation that defendants failed to provide a correct wage statement along with each wage payment is thus sufficient to establish defendants' liability in this case. Compl. ¶¶ 38, 48.

### F.   New York Law's Notice Requirement

Section 195(1) of the NYLL obligates an employer to give a notice to an employee at the time of hiring which contains certain specific information. See N.Y. LAB. LAW § 195(1). Plaintiff alleges that defendants failed to provide the required notice "when he was hired and each time his rate of pay changed." Compl. ¶ 59. This is sufficient to establish defendants' liability for failure to provide plaintiff notice in this case.

### G.   Unlawful Deductions Claim

Under NYLL §193(1)(b), "[n]o employer shall make any deduction from the wages of an employee, except deductions which ... are expressly authorized in writing by the employee and are for the benefit of the employee." To state a claim for a violation of § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages. See Kletter v. Fleming, 32 A.D.3d 566, 567, 820 N.Y.S.2d 348 (N.Y. App. Div. 3d Dep't 2006). Plaintiff alleges that

defendants unlawfully deducted withholding taxes from his cash wage payments. Plaintiff seeks to recover the unlawful deductions.

Under both Federal and New York State tax laws, an employer who does not turn over withheld pay to the government is responsible for any shortfall; the employee faces no liability. See Slodov v. United States, 436 U.S. 238, 243 (1978) ("Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment."); Berk v. Tradewell, Inc., 01 Civ. 9035 (MBM), 01 Civ. 10068 (MBM), 2003 WL 21664679 at *5 (S.D.N.Y. Jul. 15, 2003) (citing N.Y. TAX LAW § 673).[6] Thus, plaintiff suffered no damages from these deductions and his allegations fail to establish a claim for unlawful deductions under the NYLL.

### H.    Retaliation

The standards for stating a claim for retaliation under the FLSA and the NYLL are nearly identical and require a plaintiff to make a *prima facie* showing of retaliation by pleading "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Salazar v. Bowne Realty Assocs., L.L.C., 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)). For the following reasons, plaintiff's allegations establish that defendants retaliated against him in violation of the FLSA and the NYLL.

---

[6] See also 26 C.F.R. § 1.31-1(a) ("If the tax has actually been withheld at the source, credit or refund shall be made to the recipient of the income even though such tax has not been paid over to the Government by the employer."); N.Y. Tax Law § 673("[A]ny amount of tax actually deducted and withheld under this article in any calendar year shall be deemed to have been paid to the tax commission on behalf of the person from whom withheld, and such person shall be credited with having paid that amount of tax for the taxable year beginning in such calendar year.")

### 1.    Protected Activity

Plaintiff's oral complaint to defendant concerning the wage deductions was a protected activity. The FLSA and the NYLL both protect employees from retaliation related to complaints made regarding an act of the employer that the employee reasonably and in good faith believes to be a violation of either statute. 29 U.S.C. § 218c(a)(2); NY LAB. LAW § 215(1)(a). The complaining employee need not name the statute. Greathouse v. JHS Security Inc., 784 F.3d 105, 115 (2d Cir. 2015). Instead, oral complaints made to supervisors are protected as long as they are made with sufficient formality that the employer "has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." Suwanphanu v. Mount Sinai Health System, Inc., 16 Civ. 2896 (ER), 2019 WL 6050971 at *4 (S.D.N.Y. 2019) (citing Greathouse, 784 F.3d at 115).

Here, plaintiff complained to his supervisor that no withholding taxes had been paid for any of the money defendants had deducted from plaintiff's cash wages in 2019 and requested defendants to pay him only by direct deposit. Compl. ¶¶ 34, 35. Even though, as discussed above, an employer's responsibility to remit taxes to the government does not give rise to a cause of action under the FLSA or the NYLL, it is clear from plaintiff's description of his complaint to his employer, as well as his inclusion of these claims in his complaint and the instant motion, that he believed in good faith that his employer was violating the law. The Court also finds plaintiff's belief reasonable, particularly given that plaintiff was paid by different methods on alternating weeks. Furthermore, the FLSA's anti-retaliation protections are not limited to meritorious complaints. Suwanphanu, 2019 WL 6050971 at *4 (citing Greathouse, 784 F.3d at 115) ("Limiting [protections against retaliation] only to instances where the employee is right would place the risk of mistakenly interpreting the paychecks on the individual with the most to lose: the employee.").

Therefore, by complaining to his employer in February of 2020 plaintiff engaged in a protected activity.

### 2.    Adverse Employment Action

Plaintiff alleges that after he complained to defendants about the wage deductions and cash payments, he was terminated on March 18, 2020. Compl. ¶ 38. Plaintiff also alleges that while he was told he was terminated due to the COVID-19 pandemic, the service station never closed, no other employee was told to stay home, and defendants hired another mechanic to replace him. Id. ¶ 39. After being terminated, plaintiff was out of work for 20 weeks, despite his efforts to find another job. Ramah Decl. at 3. Taking plaintiff's allegations as true, as required on a motion for default judgment, it is clear that his termination was "an employment action disadvantaging plaintiff." Mullins, 626 F.3d at 53. Thus, plaintiff has successfully alleged that he was subject to an adverse employment action. See also Suwanphanu, 2019 WL 6050971 at *5 (termination "indisputably" constitutes an adverse employment action).[7]

### 3.    Causation

Causal connection between the protected activity and adverse employment action can be established indirectly, "by showing that the protected activity was followed closely in time by the adverse action." Mullins, 626 F.3d at 53 (citation omitted). Here, plaintiff complained to his employer sometime in February 2020 and was terminated on March 18, 2020, less than two months later. This is a sufficiently close temporal proximity to establish causation. See Nunez v. Metropolitan Learning Institute, Inc., 18-CV-1757 (FB)(VMS), 2019 WL 5457731 at *2 (E.D.N.Y. Oct. 24, 2019) (finding a temporal proximity of four months sufficiently close in time

---

[7] Plaintiff also alleges that defendants retaliated against him by denying him a vacation, but his motion only seeks damages related to retaliatory discharge. See Compl. at ¶ 37; Memo. at ¶ 15. Therefore, the Court need not address whether the denial of plaintiff's vacation would constitute an adverse employment action for the purposes of a retaliation claim under the FLSA and the NYLL.

to state a claim for retaliation under the FLSA and collecting cases). Thus, plaintiff has established a causal connection between his protected activity and defendants' adverse employment action. Accordingly, defendants are liable for retaliating against plaintiff in violation of the FLSA and the NYLL.

## IV.    Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Id. at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). In a FLSA action for unpaid wages, "a plaintiff can meet this burden 'through estimates based on his own recollection.'" Jemine v. Dennis, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) (quoting Kuebel v. Black & Decker, Inc., 643 F.3d 352, 362 (2d Cir. 2011)). When an employer fails to produce records, a Court may award damages to the employee based upon his recollections even if the result is only approximate. Id.

Plaintiff requests the following damages: unpaid overtime compensation; liquidated damages; statutory damages for wage statement and notice violations; lost wages due to his

retaliatory termination; unlawful deductions; pre-judgment interest; and post-judgment interest. Memo. 8–9.

Although plaintiff brings claims under both FLSA and the NYLL, he may only recover damages under one statute and may not be awarded a "double recovery." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) ("Double recovery is generally disfavored."); Martinez, 2017 WL 5033650, at *11 ("[D]ouble recovery of the same wages and related damages is not permitted.") (citation omitted). Courts generally award damages under whichever statute allows for the larger recovery. Id.

## A.    Overtime Compensation

The FLSA and the NYLL both require overtime compensation for more than 40 of hours of work at one and one-half times an employee's regular rate, see 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Courts may award damages under whichever statute permits the greater recovery, however both statutes provide the same result here. Id. As discussed above, defendants are liable to plaintiff for 19 hours of overtime worked per week.

### 1.    Hours 41 through 53

Plaintiff alleges that his weekly pay compensated him at an hourly rate of $15.00 for 53 hours of work. Accordingly, his overtime rate for the hours worked over 40 each week is $22.50. He was only compensated $15.00 per hour for these hours. Thus, plaintiff is owed $7.50 for each of the first 13 hours of overtime he worked per week. The period between April 2, 2019 and March 18, 2020 is approximately 50 weeks. Thus, plaintiff is owed $4,875.00 in overtime pay for this period (13 hours per week over 40 for which he was paid an hourly wage).[8]

---

[8] 50 (weeks worked) x $7.50 (per hour premium pay) x 13 (overtime hours) = $ 4,875.00

### 2. Hours 54 through 59

Plaintiff alleges that he was not paid at all for six hours of work each week. In order to calculate the overtime wages he is owed, the Court must first determine plaintiff's regular rate of pay for these hours. The "regular rate of pay" for an employee is determined "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b).

The Court calculates the regular rate of pay based on plaintiff's weekly rate of pay, which was $795.00. See Compl. at ¶ 31. Plaintiff's regular rate of pay can then be determined through use of the formula in 12 N.Y.C.R.R. § 146-3.5(b). $795.00 divided by 40 hours is $19.88. This figure is then multiplied by 1.5 to calculate plaintiff's overtime hourly rate of $29.81. Plaintiff is entitled to receive this overtime rate of pay for every hour per week worked in excess of the 53 hours for which he was paid $15.00 per hour. See 29 U.S.C. 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Plaintiff alleges he worked six hours per week in excess of those 53 hours and received no pay for any of these hours. See Compl. at ¶ 31. Thus, plaintiff is owed $8,943.00 in overtime pay for the six hours per week for which he was not paid an hourly wage.[9]

Accordingly, I recommend plaintiff should be awarded $13,818.00 ($4,875.00 + $8,943.00) in total overtime compensation damages.

---

[9] 50 (weeks worked) x $29.81 (per hour overtime rate) x 6 (overtime hours with no pay) = $8,943.00

### B.   Liquidated Damages

Under both the FLSA and the NYLL, a prevailing plaintiff may recover liquidated damages equal to one hundred percent of the amount awarded in unpaid wages. See 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). The NYLL permits an employer to avoid payment of liquidated damages by demonstrating "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. LAW § 663(1); see also Nam, 2021 WL 878743, at *8. Here, by their default, defendants fail to demonstrate the good faith basis required to avoid payment of liquidated damages. See id.; Lopic, 2017 WL 10845064, at *8; Martinez, 2017 WL 5033650, at *22 ("Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs.").

Although liquidated damages are available under both the FLSA and the NYLL, courts will only permit the award of damages under one statute because the liquidated damages provisions of both statutes "'serve the same practical purposes' and compensate 'the exact same harm'" and courts believe one award will serve the purpose of deterring future violations.[10] Lopic, 2017 WL 10845064, at *9 (quoting Li Ping Fu v. Pop Art. Intern. Inc., 2011 WL 6092309 at *5 (S.D.N.Y. Sept. 19, 2011); see also Martinez, 2017 WL 5033650 at *23.

Accordingly, I recommend that the Court should award plaintiff liquidated damages under the NYLL in the amount of $13,818.00, equal to the overtime wages defendants owe to plaintiff.

---

[10] Until recently some courts would award liquidated damages under both statutes under the theory that they served different purposes (FLSA liquidated damages were compensatory, NYLL liquidates damages were punitive). Lopic, 2017 WL 10845064, at *9. However, amendments to the NYLL have brought the two statutes into alignment, and in 2017, the Second Circuit stated in a summary order that the two statutes' liquidated damages schemes were "identical" and "redressed the same injuries." Chowdhury v. Hamza Express Food Corp., 666 Fed. Appx. 59, 61 (2d Cir. 2016) (affirming the District Court's denial of simultaneous recovery of liquidated damages under both the FLSA and the NYLL).

### C.     <u>Failure to Provide Wage Statements and Notice</u>

Defendants failed to provide plaintiff with pay stubs and wage statements as described in N.Y. Lab. Law § 195(3). New York law provides that employees who are not provided with these statements "shall recover in a civil action damages of two hundred fifty dollars for each workday that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." <u>Id.</u> § 198(1-d). The record is clear that plaintiff worked more than twenty days without receiving a wage statement. He is therefore entitled to the maximum statutory amount.

With respect to the notices required under section 195(1), statutory damages of $50 per workday, not to exceed $5,000, may be assessed. <u>See id.</u> § 198(1-b). Again, because plaintiff worked well over 100 workdays, he should be awarded the statutory maximum of $5,000.

Accordingly, I recommend that the Court should award plaintiff the maximum statutory damages under the NYLL in the amount of $10,000.00.

### D.     <u>Retaliation</u>

Both the FLSA and the NYLL allow a plaintiff who has been retaliated against to recover damages for lost wages as well as liquidated damages in an equal amount. 29 U.S.C. § 216; N.Y. Lab. Law § 215(2)(a). Plaintiff alleges that after defendants terminated him, he was without work for 20 weeks, despite his diligent efforts to find a new job. Ramah Decl. at 3. He seeks damages in the amount of $795.00, his regular weekly rate, from defendants for each week of his unemployment, for a total of $15,900.00, plus liquidated damages. <u>Id.</u> at 4; Memo at ¶ 15. Accordingly, I recommend plaintiff be awarded damages for his retaliation claim in the amount of $15,900.00, with an equal amount of liquidated damages, for a total of $31,800.00.

### E.   Prejudgment Interest

Plaintiff also seeks prejudgment interest on damages awarded under his state law claims. The NYLL provides that, in addition to unpaid wages and liquidated damages, "[i]n any action instituted in the courts upon a wage claim by an employee. . . the court shall allow such employee to recover . . . prejudgment interest as required by the civil practice law and rules." N.Y. LAB. LAW. § 198(1-a). The Civil Practice Law and Rules ("C.P.L.R.") §§ 5001-04 govern awards of interest in actions maintained under New York law. Prejudgment interest is available only on damages awarded under the NYLL, not on any damages awarded under FLSA, liquidated damages, or statutory damages awarded for failure to provide wage statements. Lopic, 2017 WL 10845064, at *10 (citation omitted); Zokirzoda v. Acri Café Inc., 18 Civ.11630 (JPO); 2020 WL 359908 at *6 (S.D.N.Y. Jan. 22, 2020) ("Prejudgment interest is only available for actual damages under the NYLL, not liquidated damages or statutory penalties."). Thus, plaintiff is entitled to prejudgment interest on the actual damages he is owed under the NYLL, namely his unpaid overtime wages and lost wages following his termination.

The C.P.L.R. provides that when the damages awarded accrued over a period of time, "interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." C.P.L.R. § 5001(b). In unpaid wage actions where damages accrue over time, courts calculate prejudgment interest by first determining the midpoint of the period for which damages are awarded. See Gil v. Frantzis, No. 17-CV-1520(ARR)(SJB), 2018 WL 4522094, at *13 (E.D.NY. Aug. 17, 2018). Courts use the 9% interest rate provided in C.P.L.R. § 5004 to calculate prejudgment interest. Id.

Damages began accruing on April 2, 2019. Plaintiff was fired on March 18, 2020 and did not find a new job until August 5, 2020. Compl. ¶¶ 21, 40; Ramah Decl. ¶18. Plaintiff was accruing

damages throughout this period, either in the form of unpaid overtime wages, or lost wages due to his retaliatory discharge. The midpoint of this period is December 3, 2019. The Court then calculates an award of prejudgment interest by first determining the daily accumulation of interest and multiplying that amount by the total number of days between December 3, 2019 and the date of the entry of final judgment. Using the 9% interest rate provided by the C.P.L.R, the daily accumulation of interest on plaintiff's total overtime and lost wages award of $29,718.00 is $7.33 ($29,718.00 x .09/365). For the purposes of this Report, the Court calculates interest through August 24, 2021. Plaintiff will be entitled to prejudgment interest from August 25, 2021 through the date of final judgment. There are 630 days between December 3, 2019 and August 24, 2021. As a result, the prejudgment interest accumulated in that period is $4,617.90 (630 x $7.33). This amount will increase by $7.33 each day until final judgment is entered.

Accordingly, I recommend that the Court should award plaintiff $4,617.90 in prejudgment interest plus an additional $7.33 for each day beginning August 25, 2021 through the entry of final judgment.

### F.   Post-Judgment Interest

Plaintiff is entitled to post-judgment interest as a matter of right. 28 U.S.C. § 1961; see also Nam, 2021 WL 878743, at *11 (citing Tacuri v. Nithin Constr. Co., 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015)); Guaman v. Krill Contracting, Inc., 2015 WL 3620364, at *11 (E.D.N.Y. June 9, 2015) (citing Holness v. Nat'l Mobile Television, Inc., 09-CV-2601(KAM)(RML), 2012 WL 1744847, at *7 (E.D.N.Y. Feb. 14, 2012) Report and Recommendation adopted as modified by 2012 WL 1744744 (E.D.N.Y. May 15, 2012)). Therefore, I recommend that plaintiff should be awarded post-judgment interest at the rate set forth under 28 U.S.C. § 1961.

### G.    <u>Attorney's Fees and Costs</u>

Plaintiff seeks an award of attorney's fees and costs in the amounts of $10,575.00 and $560.00, respectively. Memo. ¶ 24. To support plaintiff's request for attorney's fees and costs, plaintiff submits the affirmation of Arthur H. Forman, Esq. with contemporaneous billing records annexed to the affirmation. <u>See</u> ECF Nos. 13, 13-1, 13-2.

Plaintiff is entitled to recovery of attorney's fees and costs under both the FLSA and the NYLL. 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198(1-a). In evaluating requests for attorney's fees, courts seek to determine the "presumptively reasonable fee." <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008) (hereinafter <u>Arbor Hill</u>). The objective is to determine what a reasonable paying client would pay for the attorney's services. <u>Id.</u> at 184, 191. The presumptively reasonable fee is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (citing <u>Arbor Hill</u>, 522 F.3d at 183). Therefore, Courts separately consider the reasonableness of the attorney's requested hourly fee and the number of hours expended on the matter. <u>See, e.g.</u>, <u>Nam</u>, 2021 WL 878743, at *10-11; <u>Lopic</u>, 2017 WL 10845064, at *11-12; <u>Martinez</u>, 2017 WL 5033650, at *27–29. Attorney's fees applications must be supported by contemporaneous records which "should specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).

1.      **Reasonable Hourly Rate**

To determine the reasonable hourly rate, Courts should rely on the prevailing rates within their district. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). Plaintiff seeks to be paid for legal services rendered by Mr. Forman, whose $375 hourly rate falls within the range regularly approved for law firm partners in the Eastern District. See Perez v. Pino Grocery Corp., 17-CV-2965, 2018 WL 4138935 at *8 (E.D.N.Y. Apr. 16, 2018) ("Recent cases have held that reasonable hourly rates for partners in wage and hour cases in this District typically range from $300 to $400."). Forman's hourly rate has previously been approved in this District. See, e.g., Reyes v. Nabis Delicatessen, Inc., 18-CV-1211 (SJF)(ARL) (E.D.N.Y. July 30, 2019), adopted by 2019 WL 3948024 (E.D.N.Y Aug. 21, 2019). Accordingly, the Court finds Forman's $375.00 hourly rate reasonable.

2.      **Reasonable Number of Hours**

With regard to the reasonableness of the hours billed, "[t]he number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." Finkel v. Metro Sign & Maint. Corp., 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citation omitted). Here, the record reflects that counsel spent a total of 28.20 hours on this matter. ECF Nos. 13-1, 13-2. The time records submitted describe what tasks were performed on behalf of plaintiff, the dates on which such tasks were performed, and the amount of time expended. Id. I find this time reasonable. See, e.g., Apolinar v. Global Deli & Grocery, Inc., No. 12–CV–3446 (RJD)(VMS), 2013 U.S. Dist. LEXIS 138137, at *46 (E.D.N.Y. Sept. 25, 2013) (approving 44.93 hours as reasonable in FLSA default action). Accordingly, I recommend that the Court should award plaintiff $10,575 in attorney's fees.

### 3.      Costs

Plaintiff also seeks costs in the amount of $560.00, representing the fee for filing this action and service upon defendants. See ECF Nos. 13, 13-2. I find these costs are reasonable and recommend that plaintiff should be awarded $560.00 in costs.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted. Plaintiff should be awarded $13,818 in unpaid overtime compensation, $15,900 in lost wages, $29,718 in total liquidated damages, $10,000 in wage statement and notice damages, $4,617.90 in prejudgment interest, $10,575.00 in attorney's fees, and $560.00 in costs for a total award of $85,188.90, plus an additional $7.33 for each day beginning August 25, 2021 through the entry of final judgment. Plaintiff should also be awarded post-judgment interest at the rate set forth under 28 U.S.C. § 1961.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 24, 2021
        Brooklyn, New York